Charles Duane EDMONSON, Appellant,

v.

The STATE of Texas, Appellee.

No. 03–95–00536–CR.

Court of Appeals of Texas, Austin.

April 10, 1997.

**212**

Keith S. Hampton, Cynthia L. Hampton, Austin, for appellant.

Eugene D. Taylor, County Attorney, Michelle Burke Carmona, Assistant County Attorney, Georgetown, for state.

Before CARROLL, C.J., and KIDD and B.A. SMITH, JJ.

CARROLL, Chief Justice.

A jury convicted appellant, Charles Duane Edmonson, of selling alcoholic beverages to a minor. *See* Tex. Alco. Bev.Code Ann. § 106.03(a) (West 1995). Edmonson appeals the conviction by six points of error, complaining of the sufficiency of the evidence, the wording of the jury charge, the trial court's refusal to admit certain evidence, and the court's refusal to instruct the jury on certain defenses. We will reverse and remand the cause for a new trial.

### BACKGROUND

On August 11, 1994, Edmonson was working as a clerk at a convenience store. A minor, B.W., entered the store and purchased several alcoholic beverages. Edmonson did not ask B.W. for identification during the sale. After B.W. left the store, Officer James Poole approached B.W. and asked for his identification. Upon learning that B.W.

was a minor and that he had not been asked for identification in the store, Poole questioned Edmonson about the sale. Edmonson admitted he had not asked for B.W.'s identification that evening. He claimed, however, that B.W. had bought beer at the store several times before and had presented identification on those occasions showing him to be old enough to purchase alcohol.

At trial, Edmonson testified he had checked B.W.'s identification several times in the past. To bolster his testimony, Edmonson attempted to call as witnesses three other store clerks to show B.W. routinely presented *them* apparently valid identification indicating B.W. was old enough to purchase alcoholic beverages. The State objected, arguing the evidence was irrelevant and would confuse the jury. The court sustained the State's objection. Edmonson was ultimately convicted for violating Texas Alcoholic Beverage Code section 106.03(a) and this appeal ensued.

## DISCUSSION

A person commits an offense if with criminal negligence [1] he sells an alcoholic beverage to a minor. Tex. Alco. Bev.Code Ann. § 106.03(a). However, it is a defense to this crime if, for the purpose of buying alcohol, the minor displays an apparently valid Texas identification that contains a physical description consistent with his appearance. Tex. Alco. Bev.Code Ann. § 106.03(b) (West 1995).

In his third point of error, Edmonson contends the trial court erred when it refused to allow the three clerks to testify that B.W. had shown them evidence of his majority in the past. Edmonson argues this testimony is relevant. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable than it would be without the evidence." Tex.R.Crim. Evid. 401. The determination of whether the testimony was relevant requires us to decide whether evidence of B.W.'s presentation of apparently valid identification before August

11 could have bearing on (1) any element of the offense, or (2) the statutory defense set forth in section 106.03(b).

Edmonson first argues the evidence has bearing on the criminal negligence element of the offense. He contends the clerks' testimony that B.W. had shown *them* apparently valid identification in the past supports Edmonson's assertion that B.W. also showed *him* apparently valid identification in the past. Edmonson attempted to prove these past events in order to show he was not criminally negligent on August 11 because he reasonably believed B.W. was over the age of 21.

■ The State rejoins that the proof available to negate the element of criminal negligence is limited to events that occurred immediately prior to the particular sale for which Edmonson is charged. In support of its argument, the State contends the fact that it is a defense to have been shown believable identification implies a clerk has a duty to ask for identification during *every* sale of alcoholic beverages. The State concludes that because the three clerks could not testify about the limited issue of whether B.W. showed Edmonson identification on August 11, their testimony was not probative of any material fact. We disagree.

Section 106.03(a) of the Texas Alcoholic Beverage Code defines the offense. Section 106.03(a) does not expressly require a clerk to ask for identification every time a person tries to buy alcohol. It merely requires a clerk to ascertain with a particular measure of certainty that the person buying alcohol is at least 21 years of age. *Compare* Tex. Alco. Bev.Code Ann. § 106.03(a) *with* Tex. Penal Code Ann. § 6.03(d) (defining criminal negligence). The statutory *defense* does not engraft additional elements onto the *offense*. Neither does it preclude the existence of other factual defenses that negate elements of the offense. The statutory defense set forth in section 106.03(b) merely provides a safe harbor for clerks who, out of an abundance of caution, ask for identification, re-

---

**1.** A person is criminally negligent when he fails to perceive a specific risk and his failure constitutes a gross deviation from the standard of care that an ordinary person would exercise under the circumstances. *See* Tex. Penal Code Ann. § 6.03(d) (West 1994).

ceive apparently valid identification, and rely upon it before making a sale.

■ Because the statute does not limit the type of proof a defendant may use to defend himself, Edmonson may offer any proof available to show he *reasonably* believed B.W. was of age to buy alcoholic beverages, including proof of events that occurred before the date of the offense. Edmonson's contention that B.W. presented him apparently valid identification in the past could have constituted a reasonable explanation for failing to request identification and failing to discover B.W.'s true age on August 11. Any evidence relating to whether B.W. had shown Edmonson identification in the past, therefore, was probative of a material fact.

Having reached this conclusion, we must determine whether the three clerks' testimony about *their* prior encounters with B.W. had any tendency to support Edmonson's contention that B.W. had shown *him* identification in the past. The clerks' statements, even if limited to previous events not involving Edmonson, make more probable the facts that (1) B.W. possessed fake identification, (2) the identification was apparently valid, and (3) B.W. routinely used the false identification to buy alcoholic beverages at the store where Edmonson worked. Those facts tend to bolster Edmonson's claim that B.W. had shown him apparently valid identification in the past and, therefore, that Edmonson was not criminally negligent on August 11, 1994. We hold the clerks' testimony relevant because it was probative of whether Edmonson acted with criminal negligence, a material fact in this case.

■ Edmonson next argues the other clerks' testimony would help him establish that he was entitled to the statutory defense set forth in section 106.03(b). The State again responds that the proof available to establish the statutory defense is limited to events immediately surrounding the particular sale for which Edmonson is charged. For the same reasons we decline to engraft such a limitation on the offense, we decline to engraft such a limitation on the defense. We hold Edmonson may avail himself of the statutory defense set forth in section 106.03(b) by showing B.W. had shown Edmonson,

sometime in the past, apparently valid Texas identification containing a physical description consistent with his appearance for the purposes of inducing Edmonson to sell him an alcoholic beverage. *See* Tex. Alco. Bev. Code Ann. § 106.03(b). If believed, such proof would require an acquittal, which illustrates that the evidence was probative of a material fact in this case. Consequently, we hold the other three clerks' testimony was relevant not only to negate the criminal negligence element of the offense but also to establish the statutory defense.

■ Edmonson also argues the court erred in finding the clerks' testimony would have confused the issues and misled the jury. *See* Tex.R.Crim. Evid. 403. Considering the properly framed issues discussed above, we conclude the testimony of the three clerks would not have confused the issues or misled the jury. The evidence was uncomplicated and directly relevant to material issues in the case. Therefore, we hold the trial court erred in excluding the evidence on rule 403 grounds.

■ Our inquiry is not at an end merely because we conclude the trial court erred in refusing to admit the evidence. We must also determine whether the error harmed Edmonson. *See* Tex.R.App. P. 81(b)(2); *Bird v. State,* 692 S.W.2d 65, 70 (Tex.Crim. App.1985), *cert. denied,* 475 U.S. 1031, 106 S.Ct. 1238, 89 L.Ed.2d 346 (1986). Specifically, we must decide whether the refusal to admit the relevant evidence affected the jury to such an extent that it rendered the trial process essentially unfair. *Harris v. State,* 790 S.W.2d 568, 586–89 (Tex.Crim.App.1989).

There is a reasonable probability that the excluded evidence, if admitted, would have persuaded the jury that Edmonson's behavior on August 11 was not a gross deviation from the standard of care a reasonable person would have exercised in the same circumstances. If the jury so believed, they would likely have failed to find Edmonson criminally negligent for failing to ascertain B.W.'s true age on that occasion. The trial court's error effectively deprived Edmonson of his defense and prevented the jury from correctly applying the law to the facts. The State

argues the evidence was cumulative of other evidence admitted through other witnesses. We find no other testimony in the record suggesting that B.W. had presented apparently valid identification to the three clerks. Indeed, the State heavily relied upon B.W.'s testimony that he had never owned a fake identification card. We, therefore, sustain Edmonson's third point of error.

## CONCLUSION

Because we sustain Edmonson's third point of error, we reverse the conviction and remand the case for a new trial. Our resolution of the third point of error disposes of the whole case and we need not reach Edmonson's other assignments of error.