COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-06-129-CR

 

 

MICHAEL SEAN VANN                                                         APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

             FROM
THE 43RD DISTRICT COURT OF PARKER COUNTY

 

                                              ------------

 

                                             OPINION

 

                                              ------------

I.  Introduction

Appellant Michael Sean Vann appeals from his conviction and
eight-year sentence for evading arrest and detention with a vehicle.  In three points, appellant argues that the
evidence was legally and factually insufficient to support the verdict and that
the trial court erred by sustaining the State=s objection to
voir dire questions regarding whether potential jurors automatically
disbelieved a convicted felon.  We
reverse and remand for a new trial.








II.  Background Facts

At approximately 12:01 a.m.
on April 16, 2005, police officers pulled over a white Nissan for following
another car too closely.  When the
officers turned on their red and blue emergency lights, the driver pulled over
to the shoulder and stopped.  As the
officers prepared to exit their patrol car, the Nissan=s driver suddenly pulled back onto the road and accelerated
quickly.  The officers turned on their
lights and sirens and followed the Nissan at speeds ranging from thirty to
eighty miles-per-hour.

At some point during the
pursuit, the officers observed the female driver, Linda Garrett, exit the
driver=s seat and climb into the backseat area of the Nissan.  The male passenger, appellant, slid over and
took control of the car.  Appellant
continued driving at varying speeds for approximately one and one-half minutes,
even though an improved shoulder existed along the roadway.  A short time after appellant took the wheel,
the officers saw the Nissan=s engine Ablow@ as oil and flames exuded from the car=s hood.  Eventually, appellant
pulled the Nissan over on the shoulder and cooperated with officers from that
point on.  

A jury found appellant guilty of evading arrest and
detention with a motor vehicle, and he appeals from his conviction and
eight-year sentence.

 








III.  Appellant=s Voir Dire Question

Because appellant=s third point stems from the jury voir dire, we address it first.  In his third point, appellant complains
that the trial court erred by sustaining the State=s objection to
voir dire questions regarding whether potential jurors automatically
disbelieved a convicted felon.  The
relevant voir dire questioning is as follows:

[DEFENSE
COUNSEL]:  Let me ask you, is there
anybody here who feels thatCyou know, if you hear from the witness stand that a witness
has a prior felony conviction, that you will automatically disbelieve that
witness?

 

[THE
STATE]:  Judge, I=m going to object.  I think that=s an improper question as well.

 

THE
COURT: I=m going to sustain the objection.

 

[DEFENSE
COUNSEL]:  Your Honor, if the court
would, I had intended, after making the general question, that I would have
asked that specific question of each and every juror on the panel if I were
allowed.  It=s my understanding the court is
sustaining the objection?

 

THE
COURT:  I=ll give you a running objection.

[3 RR 82-83]

 

A.  Standard of
Review Concerning Voir Dire Questions








The trial court has broad discretion over the process of
selecting a jury.  Barajas v. State,
93 S.W.3d 36, 38 (Tex. Crim. App. 2002); Allridge v. State, 762 S.W.2d
146, 167 (Tex. Crim. App. 1988), cert. denied, 489 U.S. 1040
(1989).  Without this discretion, voir
dire could go on forever without reasonable limits.  Faulder v. State, 745 S.W.2d 327, 334
(Tex. Crim. App. 1987), cert. denied, 519 U.S. 995 (1996).  We leave to the trial court=s discretion the
propriety of a particular question, and the trial court=s discretion will
not be disturbed absent an abuse of discretion.  Barajas, 93 S.W.3d at 38; Allridge, 762 S.W.2d
at 163; Faulder, 745 S.W.2d at 334. 
A trial court abuses its discretion when it prohibits a proper question
on a proper area of inquiry.  Barajas,
93 S.W.3d at 38; Allridge, 762 S.W.2d at 163; Tijerina v. State,
202 S.W.3d 299, 302 (Tex. App.CFort Worth 2006,
pet. ref=d).   

B.  Standerfer Analysis








The determination of whether
a question propounded to venire members during voir dire is a proper commitment
question is a three‑part inquiry.  See
Standefer v. State, 59 S.W.3d 177, 182‑83 (Tex. Crim. App. 2001); see
also Lydia v. State, 117 S.W.3d 902, 905 (Tex. App.CFort Worth 2003, pet. ref=d).  In Standefer, the
court of criminal appeals held that a trial court should first determine if a
question is a commitment question.  59 S.W.3d
at 182‑83.  A commitment question
is one that commits a prospective juror to resolve, or refrain from resolving,
an issue a certain way after learning a particular fact.  Id. at 179.  If a question is a commitment question, then
the court must decide whether it is nevertheless a proper question.  Id. at 181‑82.  For a question to be a proper commitment
question, one of the possible answers to the question must give rise to a valid
challenge for cause.  Id. at
182.  However, even if a question meets the
Achallenge for cause@ requirement, the inquiry does not end there.  Id. 
A proper commitment question must also contain only those facts
necessary to test whether a prospective juror is challengeable for cause.  Id.

Either side may challenge a
juror for cause when it can show that the juror is incapable or unfit to serve
on the jury.  Tex. Code Crim. Proc. Ann. art. 35.16  (Vernon 2006); Tijerina, 202 S.W.3d at
302.  A juror
may be challenged for cause if either side can show A[t]hat the juror has a bias or prejudice in favor of or against the
defendant.@  Tex.
Code Crim. Proc. Ann. art. 35.16(a)(9). 
AA challenge for cause is only proper based on bias if a prospective
juror harbors an automatic predisposition toward one view of witness
credibility based upon knowledge of a certain fact about the witness.@  Harris v. State, 122
S.W.3d 871, 880 (Tex. App.CFort Worth, 2003, pet. ref=d).  The court of criminal
appeals has held that a potential juror may be properly challenged for cause
and removed Aif he cannot
impartially judge the credibility of witnesses.@  Ladd v. State, 3 S.W.3d
547, 560 (Tex. Crim. App. 1999), cert. denied, 529 U.S. 1070
(2000).  This means that Ajurors must be open‑minded and persuadable, with no extreme or
absolute positions regarding the credibility of any witness.@  Id.













In this court=s original opinion in Lydia, we held that the question, ADo each of you feel as though you could evaluate a witness and his
testimony and decide if he=s being truthful without automatically dismissing his testimony
because of some criminal history?@ was not a commitment question.[1]  See 81 S.W.3d 486, 491-92 (Tex. App.CFort Worth 2002, pet. granted), vacated, 109 S.W.3d 495 (Tex.
Crim. App. 2003).  The court of criminal
appeals granted Lydia=s petition
for discretionary review and held that the question was a commitment question
because it Aasked
whether the prospective juror would resolve the issue of witness credibility
based on a particular factBthe witness=[s] criminal
history.@ Lydia, 109 S.W.3d at 499. 
The court of criminal appeals remanded the case to this court for an
analysis under the remaining prongs of the Standefer test.  Id. at 500.  On remand, we held that the commitment
question met the remaining two prongs of Standefer; it would lead to a
proper challenge for cause based on a juror=s bias, and it included only those facts necessary to test whether a
prospective juror was challengeable for cause.  Lydia, 117 S.W.3d at 904‑06.  Consequently, we held that the trial court
did not abuse its discretion by permitting the State to ask this proper
commitment question during voir dire. Id. at 906.

Here, the voir dire question
that defense counsel sought to ask is substantially the same as the question
the State asked in Lydia.  Lydia, 109 S.W.3d at 499.  Appellant=s only witness, Garrett, was a convicted felon, so the defense wanted
to know whether potential jurors would automatically disbelieve a witness=s (i.e., Garrett=s) testimony
because of her status as a felon.  We see
no distinction between the question here, A[I]s there anybody here who feels that . . . if you hear from the
witness stand that a witness has a prior felony conviction, that you will
automatically disbelieve that witness?@ and the question in Lydia, ADo each of you feel as though you could evaluate a witness and his
testimony and decide if he=s being truthful without automatically dismissing his testimony
because of some criminal history?@  Id.  Accordingly, we hold that the question at
issue here is a commitment question because it asked prospective jurors whether
they would resolve an issue, witness credibility, based solely on a particular
fact, that the witness was a convicted felon. 
See id.; Tijerina, 202 S.W.3d at 302.  








Regarding the second prong of
Standefer, we conclude the question would lead to a proper challenge for
cause under article 35.16(a)(9) based on a juror=s bias.  See Tex. Code Crim. Proc. Ann. art.
35.16(a)(9); Ladd, 3 S.W.3d at 560 (holding that a prospective juror may
be properly challenged for cause if he cannot impartially judge witness=s credibility); Lydia, 117 S.W.3d at 905. The State argues that
under Standefer=s second prong, the question at issue would not have led to a proper
challenge for cause because the rules of evidence allow a juror to disbelieve a
witness on account of her prior felony convictions.  See Tex.
R. Evid. 609(a) (A[f]or
purposes of attacking the credibility of a witness, evidence that the witness
has been convicted of a crime shall be admitted if elicited from the witness or
established by public record but only if the crime was a felony or involved
moral turpitude@).  We agree that a juror may choose to
disbelieve any witness once the witness testifies.  But if a potential juror states that he would
automatically disbelieve a witness who has not yet testified based solely on
the witness=s status as
a felon, that potential juror cannot impartially judge the credibility of the
convicted felon witness.  See Tijerina, 202 S.W.3d at
302.  The
question posed by defense counsel in voir dire only sought to elicit whether
potential jurors had an automatic predisposition to disbelieve a witness who
was a convicted felon, and thus, it would have led to a proper challenge for
cause.  See id.








Lastly, we must determine
whether the question included only those facts necessary to determine whether a
prospective juror was challengeable for cause. 
Standefer, 59 S.W.3d at 182; Tijerina, 202 S.W.3d at
302; Lydia, 117 S.W.3d at 906.  Here, appellant=s question only asked whether jurors would automatically disbelieve a
witness with a prior felony conviction. 
We therefore conclude that the question proposed by defense counsel
during voir dire was a proper commitment question and satisfied the third prong
of Standefer.  59 S.W.3d at 182; Tijerina, 202 S.W.3d at
302; Lydia, 117 S.W.3d
at 906. Accordingly, we hold that the trial court abused its discretion by
prohibiting defense counsel from asking potential jurors the question. See
Barajas, 93 S.W.3d at 38; Allridge, 762 S.W.2d at 163; Tijerina, 202 S.W.3d at
304. 

C.  Harm Analysis








Having found error, we must
conduct a harm analysis to determine whether the error calls for reversal of
the judgment.  See Tex. R. App. P. 44.2; Gonzales v.
State, 994 S.W.2d 170, 171 (Tex. Crim. App. 1999) (holding that
impermissible exclusion of proper question in voir dire is subject to harm
analysis).  If the error is
constitutional, we apply rule 44.2(a) and reverse unless we determine beyond a
reasonable doubt that the error did not contribute to the appellant=s conviction or punishment.  Tex. R. App. P. 44.2(a).  Otherwise, we apply rule 44.2(b) and
disregard the error if it did not affect the appellant=s substantial rights.  Tex. R. App. P. 44.2(b); see Mosley
v. State, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998) (op. on reh=g), cert. denied, 526 U.S. 1070 (1999); Coggeshall v. State,
961 S.W.2d 639, 642‑43 (Tex. App.CFort Worth 1998, pet. ref=d).

Appellant=s complaint is governed by rule 44.2(b).  See Tex.
R. App. P. 44.2(b); Rich v. State, 160 S.W.3d 575, 577‑78
(Tex. Crim. App. 2005); Tijerina, 202 S.W.3d at 304.  A substantial right is
affected when the error had a substantial and injurious effect or influence in
determining the jury=s
verdict.  King v. State, 953
S.W.2d 266, 271 (Tex. Crim. App. 1997) (citing Kotteakos v. United States,
328 U.S. 750, 776, 66 S. Ct. 1239, 1253 (1946)); Coggeshall, 961 S.W.2d
at 643. 








In making this determination,
we review the record as a whole. See Johnson v. State, 967 S.W.2d 410,
417 (Tex. Crim. App. 1998).  Appellant
was prevented from asking a proper commitment question during voir dire and was
thereby prevented from challenging for cause any jurors harboring an automatic
disbelief of testimony given by a convicted felon.  See Tex.
Code Crim. Proc. Ann. art. 35.16(a)(9); Tijerina, 202 S.W.3d at
305. 
Consequently, appellant was prevented from learning whether potential
jurors could impartially judge the credibility of his only witness, Garrett, a
convicted felon.  See Ladd, 3
S.W.3d at 560; Tijerina, 202 S.W.3d at 305.  Appellant had a
constitutional right to call witnesses and offer evidence on his own behalf.  Tex.
Const. art. 1, ' 10; see Washington v. Texas, 388
U.S. 14, 19, 87 S. Ct. 1920, 1923 (1967); Brazelton v. State, 947 S.W.2d
644, 650 (Tex. App.CFort Worth 1997, no pet.); Hernandez v.
State, 897 S.W.2d 488, 493 (Tex. App.CTyler 1995, no
pet.).  Appellant
also had a constitutional right to an impartial jury.  See U.S. Const. amend. VI; Tex.
Const. art. I, ' 10; see
also Sanchez v. State, 165 S.W.3d 707, 710‑11 (Tex. Crim. App. 2005)
(noting that the first purpose of voir dire is to establish a basis for a
challenge for cause when a potential juror is legally disqualified or is biased
or prejudiced for or against one of the parties or the relevant law); Gonzales
v. State, 2 S.W.3d 600, 603 (Tex. App.CTexarkana 1999, pet. ref=d) (APart of [the
right to an impartial jury and assistance of counsel] is an adequate voir dire
to identify unqualified jurors.@). 

The burden to demonstrate
harm does not rest on appellant or the State; it is our responsibility as an
appellate court to review the record and assess harm.  See Johnson v. State, 43 S.W.3d 1, 4‑6
(Tex. Crim. App. 2001); see also Ovalle v. State, 13 S.W.3d 774, 787
(Tex. Crim. App. 2000).  But we cannot
predict how defense counsel would have conducted the trial differently had he
not been precluded from asking the proper voir dire question at issue
here.  See Gonzales, 2 S.W.3d at
606. 








Here, it is entirely possible, even likely, that voir dire
members who automatically disbelieved witnesses with prior felony convictions
served on appellant=s jury. 
The harm from the trial court=s error is that appellant was precluded from making an intelligent
decision about whether to exercise the substantial right that he possesses to
call a witness on his behalf to testify in front of an impartial jury.  See Jones v. State, 982 S.W.2d 386,
393 (Tex. Crim. App. 1998) (noting that A[t]he defendant=s only
substantial right [in the context of jury selection] is that the jurors who do
serve be qualified,@ not to have
a particular person serve on a jury).  Because appellant=s only witness was
Garrett, a convicted felon, some or all of the jurors could have automatically
dismissed everything she testified to. 
Regardless, appellant called Garrett to testify on his behalf.  During her testimony, Garrett contradicted
the State=s witnesses= testimonies
regarding the distance and the length of time that appellant drove the Nissan
before stopping.  These factors were
critical to the jury=s determination of appellant=s guilt.  

We conclude that in the
context of the entire case against appellant, the character of the trial court=s error in prohibiting defense counsel from asking this question is
such that it had a significant or injurious effect on the jury=s verdict so that appellant's substantial rightsCspecifically, his rights to a fair and impartial jury and to make an
intelligent decision on whether to call or not call a witnessCwere affected.  See Tijerina, 202 S.W.3d at
306. 
Accordingly, we sustain appellant=s third point.

 








IV.  Appellant=s Legal Sufficiency Challenge

In his first point, appellant
challenges the legal sufficiency of the verdict.  We address this point because it could
potentially provide appellant with greater relief than his third point.[2]    

A.  Standard of Review

In reviewing the legal
sufficiency of the evidence to support a conviction, we view all the evidence
in the light most favorable to the verdict in order to determine whether any
rational trier of fact could have found the essential elements of the crime
beyond a reasonable doubt.  Jackson v.
Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Hampton v.
State, 165 S.W.3d 691, 693 (Tex. Crim. App. 2005). 

B.  Discussion

A person violates section
38.04 of the penal code if he intentionally flees from a police officer
attempting lawfully to arrest or detain him. 
Tex. Penal Code Ann. ' 38.04  (Vernon 2003). 








Appellant argues that the
evidence is insufficient to support his conviction because the State failed to
show that the police officers attempted to arrest him; instead, appellant
argues, the evidence only showed that the officers were attempting to arrest Garrett.  Therefore, according to appellant, the State
did not satisfy all of the elements of penal code section 38.04.  See Tex.
Penal Code Ann. ' 38.04.  We disagree.

During trial, Officer Kevin
Salters testified that he saw a white Nissan following another car too
closely.  Officer Salters immediately
activated his patrol car=s red and
blue emergency lights and stopped the Nissan. 
When he pulled the Nissan over, Officer Salters saw that the driver was
a female and the passenger was a male. 
Deputy Chris Hudson was on duty with Officer Salters on April 16,
2005.  Deputy Hudson confirmed that
Garrett was driving the Nissan when they initially pulled it over for following
another car too closely.  Neither party
disputes that the initial detention of Garrett was lawful.  Appellant asserts, however, that because he
was simply a passenger, the officers never sought to arrest or detain him.  








When police officers stop and
lawfully detain a driver for committing a traffic offense, all passengers
inside the driver=s vehicle
are also detained.  Josey v. State,
981 S.W.2d 831, 837-38 (Tex. App.CHouston [14th Dist.] 1998, pet. ref=d).  Moreover, passengers in an
automobile are subject to temporary investigative detentions in the same manner
as pedestrians.  Rhodes v. State,
945 S.W.2d 115, 117 (Tex. Crim. App.), cert. denied, 522 U.S. 894
(1997); see also Maryland v. Wilson, 519 U.S. 408, 412-14, 117 S. Ct.
882, 885-86 (1997) (holding that as a practical matter, any passengers are
stopped when their driver is stopped for committing a traffic offense).  Here, by stopping Garrett, the police
officers detained both Garrett, the driver, and appellant, the passenger.  See Rhodes, 945 S.W.2d at 117.    








Therefore, we must next
consider whether the evidence is legally sufficient to support the verdict that
appellant, as a detainee, evaded arrest. 
After the officers pulled the Nissan over, Garrett slowed down on the
shoulder of the road to a stop.  When the
officers got out of their patrol car, Garrett almost immediately pulled the
Nissan back onto the road and accelerated away from the officers.  At this point, the officers returned to their
patrol car, turned on their emergency lights and sirens, and followed the
Nissan.  The officers testified that
Garrett drove between thirty miles-per-hour and eighty miles-per-hour in a
sixty-mile-per-hour zone for approximately two to three miles. Approximately
half way through the pursuit, the officers saw Garrett climb from the driver=s seat into the back seat and saw appellant slide over into the driver=s seat and take control of the Nissan. 
Almost immediately after appellant took control, the officers saw the
Nissan=s engine Ablow.@  Oil and other fluids from the
Nissan splattered onto the officers= patrol car.  One or two minutes
later, appellant pulled the Nissan over to the shoulder of the road and
cooperated with the police officers from that point on. 

Both officers testified that
the chase lasted approximately five miles. 
Further, Officer Salter testified that appellant took control of the
Nissan at the half way point in the chase, drove for a couple of miles, and
pulled over after driving for a minute or two. 
Deputy Hudson testified that appellant did not stop the Nissan until one
or two minutes after he gained control of it, even though an improved shoulder
existed throughout the entire route. 








Appellant argues that Ano normal person would [be] cool, reflective, and immediately rational@ after being forced to take the wheel of a moving car with a blown
engine.  While this may be true, it seems
equally irrational for a person to continue driving away from police officers
for at least a mile when the officers have already been chasing the car for
approximately two miles.  The evidence
here shows that appellant knew the officers were trying to detain him and
Garrett but continued to flee for one or two miles after taking control of the
Nissan.  We conclude that the evidence is
legally sufficient to support the jury=s verdict that appellant fled from police officers who were legally
attempting to detain him.  See Tex. Penal Code Ann. ' 38.04; Jackson, 443 U.S. at 319, 99 S. Ct. at 2789; Hampton,
165 S.W.3d at 693.  Accordingly, we
overrule appellant=s first
point.  

V.  Appellant=s Factual Sufficiency Challenge

We need not consider
appellant=s second
point, which raises a factual sufficiency challenge because, unlike his legal
sufficiency challenge, this point would not entitle him to an acquittal instead
of remand.  Thus, the factual sufficiency
resolution is not Anecessary to
final disposition of the appeal.@  See Tex. R. App. P. 47.1; Freeman v. State, 985 S.W.2d 588, 590 (Tex. App.CBeaumont 1999, pet. ref=d).

VI.  Conclusion

Having sustained appellant=s third point and overruled
his first point, we reverse the trial court=s judgment and remand for new
trial.       

 

 

TERRIE LIVINGSTON

JUSTICE

 

PANEL B:   LIVINGSTON, DAUPHINOT, and HOLMAN, JJ.

PUBLISH

DELIVERED:
February 8, 2007











[1]In
Lydia, the victim was a convicted felon, so the State wanted to know
whether potential jurors would automatically dismiss a witness=s
(i.e., the victim=s)
testimony because of the witness=s criminal history.  117 S.W.3d at 905.





[2]Because a finding of legal
insufficiency results in an affirmative judgment in the appellant=s favor rather than vacation of the
judgment against him, a successful legal
sufficiency issue would provide somewhat greater
relief to the appellant. See Edmonson v. State,
951 S.W.2d 6, 6 (Tex. Crim. App. 1997); Roberson v. State, 810 S.W.2d
224, 225 (Tex. Crim. App. 1991).